IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

v.                                :      CRIMINAL NO. 17-572

MICHAEL W. SEIBERT JR.            :

### THE UNITED STATES' SENTENCING MEMORANDUM

The United States of America respectfully submits its sentencing memorandum in connection with the sentencing hearing scheduled in this matter for June 6, 2019. As set forth below, the government requests a sentence of at least 30 years imprisonment, within the corrected Sentencing Guidelines range.

### I. SUMMARY OF THE OFFENSES

In March 2014, the Department of Homeland Security ("HSI") received information about an individual uploading child pornography to a SkyDrive account. On July 2, 2014, HSI agents executed a search warrant for computer evidence at 247 East Walnut Street, Allentown, Pennsylvania, the personal residence of Michael Seibert, Jr., and his mother. Agents seized computers and storage devices containing images of child pornography. Agents also executed a search warrant for the contents of Seibert's Microsoft SkyDrive electronic storage account. Forensic analysis of the Seibert's seized devices and his SkyDrive account identified more than 15 video files of child pornography and approximately 400 digital image files of child pornography.[1] The digital images had been uploaded from an IP address registered to 247 East Walnut Street, Allentown, Pennsylvania, to a SkyDrive account registered to Seibert.

---

[1] The Court reviewed representative samples of the digital images on August 20, 2018, in connection with the hearing on the government's pretrial motion to admit evidence. These materials will be available for the Court's inspection at the sentencing hearing.

The investigation disclosed that many of the CP images involved minor females who had been communicating with Seibert through electronic devices, including cellular telephones. Investigative agents identified two of the minor females depicted in digital images of child pornography: Victim No. 1 and Victim No. 2. These victims confirmed that when they were between 12 and 14 years old, they had communicated by computer with a teenage male known to them as "Tony Jeff." The victims confirmed that "Tony Jeff" had asked them to take sexually explicit photographs of themselves and send them to him. The victims identified copies of sexually explicit digital images recovered from Seibert's storage devices and Seibert's SkyDrive account, as photographs they had taken of themselves and sent to "Tony Jeff." (Seibert used the name "Tony Jeff" in one of his Facebook accounts.) Forensic analysis of Seibert's electronic devices also identified stored images of child pornography which had been downloaded from child pornography sites accessible through the internet.

On October 26, 2017, a grand jury returned an indictment charging Seibert with two counts with manufacturing child pornography, in violation of 18 U.S.C. § 2251(a), one count for Victim No. 1 (Count One) and one count for Victim No. 2 (Count Two). The indictment charged Seibert with one count of possession of child pornography, based on the other images child pornography found on Seibert's devices. On September 7, 2018, Seibert pled guilty to Count Three. Trial commenced on September 10, 2018. On September 11, 2018, after the jury had been selected, Seibert pled guilty to Counts One and Two.

## II. SENTENCING CALCULATION

A. Statutory Maximum Sentences

The Court may impose the following statutory maximum sentences:

Counts One and Two (manufacture of child pornography): on each count, a mandatory minimum term of 15 years' imprisonment, up to a maximum term of 30 years' imprisonment, a mandatory minimum five years of supervised release up to lifetime supervised release, a $250,000 fine, a $100 special assessment, mandatory restitution, and criminal forfeiture.  Forfeiture of visual depictions of child pornography and any property used or intended to be used, to commit or to facilitate the commission of the violations, and any property constituting, or derived from, proceeds obtained, directly or indirectly, from the commission of such violations, may be ordered.  See 18 U.S.C. § 2253.

Count Three (possession of child pornography): a term of imprisonment of up to 20 years, a term of supervised release of five years up to lifetime of supervision, a fine of up to $250,000, mandatory restitution, a $100 special assessment, and criminal forfeiture.

B. Sentencing Guidelines Calculation

The United States Probation Office has determined Seibert's sentencing range under the applicable Sentencing Guidelines as follows:

| | |
|---|---|
| Total offense level, Count One: | 36 |
| Total Offense level, Count Two: | 36 |
| Total Offense level, Count Three: | 36 |
| Multiple Count Adjustment: | + 3 |
| Combined Adjusted Offense Level: | 39 |
| Acceptance of Responsibility: | - 2 |
| Total Offense Level | 37 |

The Probation Office found that Seibert has one criminal history point based upon a juvenile adjudication for indecent exposure, resulting in a criminal history of category I.

Accordingly, Seibert's advisory Sentencing Guidelines range was calculated at 210 to 262 months' imprisonment.

As set forth below, the Probation Office did not correctly calculate the Guidelines range, as it failed to apply U.S.S.G. § 4B1.5(b) to the defendant's offense conduct.[2]  The government submits that § 4B1.5(b) does apply here, and that Seibert's offense level should be increased five levels because his offense conduct involved a pattern of activity involving prohibited sexual conduct.   Pursuant to § 4B1.5(b), the defendant's offense level would be level 42 in criminal history category I, resulting in an advisory Sentencing Guidelines range of **360 months to life imprisonment**.

### III. THE OFFENSE CONDUCT

In March 2014, HSI received reports from the Pennsylvania Internet Crimes Against Children Task Force of the Delaware County District Attorney's Office, concerning internet activity involving child pornography.   The National Center for Missing and Exploited Children prepared the reports from information provided by Microsoft Corporation.   The reports indicated that on January 20, 2014 graphic child exploitation material had been uploaded to a Microsoft SkyDrive account.

The digital files depicted graphic images of sexual exploitation of identified child victims.   Two examples were:

---

[2]   The government did not submit a timely objection to the Probation Office's decision not to apply § 4B1.5(b), but does so here as part of this sentencing memorandum.   The government's failure to assert a timely objection to the Presentence Report cannot and should not preclude the Court's application of the legally correct enhancement.

4

- 05851879.jpg was uploaded on January 20, 2014.   The file depicted a naked prepubescent girl lying on a bed with her legs spread apart and her genitalia exposed to the camera.   This image contains an identified child victim.

- 16819539.jpg was uploaded on January 20, 2014.   The file depicted a naked prepubescent girl lying on a bed holding her legs apart.   The child's genitalia and anus are exposed to the camera.   This image contains an identified child victim.

The SkyDrive account was registered to a "bostonfan38@live.com" e-mail address.   The subscriber information for the SkyDrive account was:

> First Name: Mike
> Last Name: SEIBERT
> Zip: 18109
> Date Registered: 4/29/2012

Further investigation confirmed the digital files containing visual depictions of Victim No. 1 and Victim No. 2 had been uploaded to the SkyDrive account registered to the defendant, using an internet service registered to Seibert's mother at Seibert's residence.

Execution of the Search Warrant at Seibert's Residence

On July 2, 2014, HSI agents and Pennsylvania State Police Troopers executed a search warrant at 274 East Walnut Street.   Michael Seibert and his mother were present in the house.   During the search, agents seized desktop computers, hard drives, a laptop computer, a thumb drive, seven SD cards, and four cellular telephones.   Forensic analysis of the electronic devices disclosed that many of the devices contained digital images of child pornography, including digital images of prepubescent females and males displaying their genitalia.

HSI Special Agent Emily Evans interviewed the defendant after the completion of the search.   Seibert told the agents that he knew they were looking for "porn stuff."   After the agents informed Seibert that the search was being conducted because images of child pornography had been uploaded to a Facebook account from an internet source connected to the residence, Seibert admitted that he viewed child pornography and "regular pornography" every

5

day.   Seibert admitted he used the laptop computer and one of the desktop computers to view
images of child pornography on the internet.   Seibert admitted he used his cellular telephone to
view images of child pornography.   Seibert stated that when he found images on a website that
he liked, he saved the images to his cell phone or his computer.   Seibert admitted he stored
images of child pornography on flash drives, under files named "pics" and "good pics."

Seibert stated he communicated with a woman from Illinois who had a seven-year
old daughter.   Seibert asked the woman to take photographs of her having sexual contact with
her daughter.   Seibert stated he deleted these images shortly after receiving them on his cell
phone.   Seibert identified a school photograph found in his residence of a young female as a
photograph of the daughter.

Agent Evans showed Seibert several cropped screenshots of young females taken
from his SkyDrive account.   Seibert stated that these digital images had been sent to him by text
message from a woman in Pennsylvania.   Seibert stated he had e-mailed the images to his own
computer.   Seibert gave agent Evans permission to access his Facebook accounts.   One account
contained a profile for "Michael Seibert, Jr."   Another Facebook account contained a profile for
"Michael Seibert."   One account contained e-mail messages which appeared to have been sent
by Seibert to himself, and which contained images of child pornography.   Another Facebook
account was registered contained a profile for "Tony Jeff."   This profile included a photograph
of a teenage male, and contained a large volume of messages between "Tony Jeff" and young
females.

Execution of the Microsoft Search Warrant

On June 27, 2014, HSI served a federal search warrant on Microsoft Corporation
for the contents of Seibert's SkyDrive account.   Forensic analysis of the SkyDrive account

disclosed multiple folders containing images of sexual exploitation of children.   The files included e-mail messages saved to the SkyDrive account.   Agent Evans determined Seibert had been communicating with at least ten minor females, and was able to identify several of the females Seibert had been communicating with over the internet based upon contact information and photographs recovered from Seibert's Facebook accounts and e-mail records, including Victim No. 1 and Victim No. 2.

The SkyDrive account contained images of Victim No. 1 and Victim No. 2 engaging in sexually explicit conduct, namely, the lascivious exhibition of their genitals and pubic areas.   A series of digital images uploaded to Seibert's SkyDrive account depicted Victim No. 1, including a close-up of her naked genital area while Victim No. 1 posed in a sexually suggestive manner.   A similar series of images depicted Victim No. 2.

Victim No. 1

On April 1, 2015, an HSI special agent interviewed Victim No. 1 at her residence, which is located in another state.   Victim No. 1 stated she was approximately 12 years old when she met "Tony Jeff" on an internet chat room.   Victim No. 1 communicated with "Tony Jeff" for three or four years, using internet chat room, text messages, and the telephone.   "Tony Jeff" was always asking her to send nude photographs of herself, and she did so on multiple occasions. Victim No. 1 identified several digital images recovered from Seibert's computer devices as some of the nude photographs she sent to "Tony Jeff."   Victim No. 1 asked "Toney Jeff" to send her a picture of himself, but he never did.   "Tony Jeff" said he would visit Victim No. 1, but never did.   Victim No. 1 believed "Tony Jeff" was about 15 or 16 years old.

Victim No. 2

Victim No. 2 confirmed she was a friend of "Tony Jeff."   Victim No. 2 stated she

7

never met "Tony Jeff," but communicated with him by internet, text message, and telephone.
Victim No. 2 met "Tony Jeff" on an internet chat room when she was 13 or 14 years old.   They
began exchanging text messages and would speak over the telephone.   "Tony Jeff" told Victim
No. 2 he was in high school in Allentown, Pennsylvania, and took care of his grandmother.
Victim No. 2 thought it was odd that "Tony Jeff" never wanted to communicate by Skype, and
never wanted to meet in person.

"Tony Jeff" frequently wanted to talk about sexual topics.   "Tony Jeff" would
send her naked pictures of himself.   When shown digital images recovered from Seibert's
SkyDrive account, Victim No. 2 confirmed the images were of herself, and confirmed she was
under 18 years of age when she sent the images to "Tony Jeff."[3]

## IV. SENTENCING ISSUES

A. Seibert's Offense Level Should Be Increased Five Levels Under § 4B1.5(b)(1)
Because His Offense Conduct Involved a Pattern of Prohibited Sexual Conduct.

Sentencing Guideline 4B1.5(b) provides that:

In any case in which the defendant's instant offense of conviction is a
covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline
applies, and the defendant engaged in a pattern of activity involving
prohibited sexual conduct:

(1) The offense level shall be **5** plus the offense level determined under
Chapters two and Three.

U.S.S.G. § 4B1.5(b)(1).

Seibert's convictions on Counts One and Two qualify as covered sex

crimes because they are production offenses under Chapter 110 of Title 18 of the United

---

[3] Victim No. 1 and Victim No. 2 have prepared written victim-impact statements which the
government will submit to the Court separately under seal.   Neither victim intends to appear at
the sentencing hearing.

States Code.   See U.S.S.G. § 4B1.5(b), comment. (n. 2).   Neither § 4B1.1 nor

§ 4B1.5(a) apply to Seibert's offense conduct.   Seibert is not a career offender under

§ 4B1.1.   Seibert has a prior juvenile conviction for indecent exposure, but that

conviction does not qualify as a sex offense conviction under § 4B1.5(a).   See U.S.S.G.

§ 4B1.1(a), comment. (n. 3).   Seibert's offense conduct involves a pattern of prohibited

sexual conduct because he engaged in the production of child pornography with a minor

on two separate occasions. See U.S.S.G. § 4B1.5(b), comment. (n. 4.).   Seibert

committed one production offense with Victim No. 1 and a separate production offense

with Victim No. 2.   The fact that Seibert engaged in a pattern of prohibited sexual

conduct during the course of the offense of conviction does not preclude application of

the enhancement of § 4B1.5(b).   See U.S.S.G. § 4B1.5(b), comment. (4).   Accordingly,

Seibert's total offense level is level 42 in criminal history category I, resulting in an

advisory Sentencing Guidelines range of 360 months to life imprisonment.

   The Probation Office found that none of the Chapter Four enhancement

applied to Seibert's Guidelines calculation.   However, § 4B1.5(b) must apply to the

determination of the defendant's advisory Sentencing Guidelines range as a matter of

law.   See U.S.S.G. § 1B1.1(a)(6); United States v. Wilson, 2007 WL 3070361 (E.D. Va.

2007).

 B.   The Court Must Order That Seibert Pay Restitution To His Victims.

   A defendant convicted of an offense involving the sexual exploitation of a

minor is required to pay mandatory restitution to the victims of his offense conduct.   See

81 U.S.C. §§ 2259, 3663A.   The defendant is liable for the full amount of the victims'

losses, and includes: medical expenses for physical, psychiatric or psychological care;

physical and occupational therapy and rehabilitation; necessary expenses for

transportation, temporary housing and child care; lost income; reasonable attorneys' fees;

and any other relevant losses incurred by the victims.    See 18 U.S.C. § 2259(c)(2).    At

this time, the government is not able to ascertain the amount of losses incurred by Victim

No. 1 and Victim No. 2.    The government has received one claim for restitution from an

identified child pornography victim of the defendant's offense conduct charged in Count

Three.    Accordingly, the government requests that the Court order the defendant to

make full restitution to the identified victims as part of his sentence, but schedule a date

for a final determination of the of the victims' losses not later than 90 days after

sentencing.    See 18 U.S.C. § 3664(d)(5).

## V. ANALYSIS OF THE SENTENCING FACTORS

Analysis of the sentencing factors of 18 U.S.C. § 3553(a) demonstrates a sentence

of at least 30 years' imprisonment, which is within the corrected Sentencing Guidelines range, is

necessary to protect the community, deter the defendant from similar conduct in the future, and

provide for just punishment.[4]    The Supreme Court has declared: "As a matter of administration

and to secure nationwide consistency, the Guidelines should be the starting point and the initial

benchmark." *Gall v. United States*, 552 U.S. 586 (2007).    Thus, the Sentencing Guidelines

---

[4]    The "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence
sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)
of this subsection."    The Third Circuit has held that "district judges are not required by the
parsimony provision to routinely state that the sentence imposed is the minimum sentence
necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not
greater than necessary" language requires as a general matter that a judge, having explained why
a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United
States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States v.
Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

remain an indispensable resource for assuring appropriate and uniform punishment for criminal offenses.

This Court must consider all of the sentencing factors set forth in Section 3553(a). These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### 1. The Nature and Circumstances of the Offense.

The production of child pornography is undisputedly a grave offense. As the Supreme Court has explained, "[c]hild pornography harms and debases the most defenseless of our citizens. Both the State and Federal Government have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). Congress, too, has explained the difficulties in successfully combating the "immense" problem of child pornography and the "rapidly-growing market" for such materials, which is fueled by new technologies that were largely unavailable when the Sentencing Guidelines were first promulgated. *See* S. Rep. No. 108-2 (2003).

Indeed, Congress has repeatedly expressed its dismay about the "excessive

11

leniency" of federal sentences, *see* H. Rep. No. 108-66; S. Rep. No. 104-358, especially in light

of the continuing harm caused to the children appearing in such materials, as well as the

inflammatory effect it has on the "desires of child molesters, pedophiles, and child

pornographers" which results in a robust and growing market for child pornography and

therefore increased abuse of innocent children.  *See* Child Pornography Prevention Act of 1996,

Pub. L. No. 104-208, § 121, 110 Stat. 3009, 3009-26, 27 (1996), codified at 18 U.S.C. § 2251

note; *United States v. MacEwan*, 445 F.3d 249, 250 (3d Cir. 2006); *United States v. Norris*, 159

F.3d 926, 929 (5th Cir. 1998) ("[T]he victimization of the children involved does not end when

the pornographer's camera is put away.").

There can be no question that Seibert engaged in extremely serious offenses by

manufacturing pornographic images of Victim No. 1 and Victim No. 2.  Seibert was an adult at

the time of the offense conduct.  He preyed on the most vulnerable in society -- young children,

aged approximately ten to 14 years old.  Seibert used deceit and deception to take advantage of

the innocence of these children.  Seibert created a false internet identity, posing as a teenage boy

named "Tony Jeff."  Seibert used this false persona to cultivate and develop a false relationship

of trust with Victim No. 1 and Victim No. 2.  Seibert pretended to be concerned about the

typical teenage issues Victim No. 1 and Victim No. 2 were experiencing and confiding to him.

Seibert manipulated his victims into believing that "Tony Jeff" was friend who cared deeply

about their problems and concerns.  In fact, Seibert was simply taking advantage of their

innocence to create an emotional trap which Seibert used to gratify his own sexual desires.

Seibert's interactions with Victim No. 1 and Victim No. 2 were not incidental.

Seibert maintained an internet relationship with these children for several years.  Seibert

exposed Victim No. 1 and Victim No. 2 to a sordid world far beyond their years.  Victim No. 1

and Victim No. 2 came of age under the oppression of Seibert's sexual exploitation.   Seibert

robbed these children of a normal, healthy development which innocent children typically

experience while growing up.   Instead of happy memories of their childhood, Victim No. 1 and

Victim No. 2 must continually relive their horrid interactions with "Tony Jeff."

          The harm to Victim No. 1 and Victim No. 2 resulting from Seibert's sexual abuse

is extensive and will be long lasting.   In her victim impact statement, Victim No. 1 states:

> I am a 20 year of (sic) woman and I am victim of child pornography.  I am
> still learning how this ordeal has negatively impacted me.  Now that I am
> older, I can see how many of the choices I made were guided by the
> person I knew as "Tony Jeff."  I can see how he encouraged to take the
> wrong course destroying the normal childhood, teenage years and early
> adulthood that everyone deserves.
>
> I met "Tony Jeff" when I was around 14 years old.  He told me all the
> things that a teenager wants to hear.  He told me I was pretty.  He told me
> that he loved me.  He made promises to me about our future.  I was head
> over hills in love with him.  He made me feel special.  (…)
>
> I get sick to my stomach when I think about my photos being all over the
> internet.  Who's looking at my pictures?  Are they selling or sharing
> them?  Will people recognize me?  I have severe trust issues.  I don't
> trust my judgment.  I have to ask others to check things out for me.  The
> internet and social media are terrifying.  I don't know if I'm really friends
> with who I think I'm friends with.  Is it really the person pictured on the
> screen or is it someone preying on me again?  This is stressful in every
> way.  It makes me angry to think about my privacy being exploited and
> possibly sold.  I don't want the world seeing photos of me, sharing them,
> selling, or whatever.  I have a right to share a picture with whomever I
> choose, but to take advantage of me and pretend to love me  and be
> someone you're not is sick and disgusting.
>
> I live every day of my life in constant wonder about the pictures, the lies,
> and humiliation over and over again.  Will someone see my pictures and
> recognize me.  It hurts me to know someone is looking at them - at me -
> when I was just a young lady.  I am in forever pictures all over the web,
> what can I do.  I can't take it back.  I can't get the photos back.  I want it
> all erased.  I want it all stopped, but I'm powerless to stop it.  As I get
> older and my understanding of the impact gets clearer, I get angrier.  My
> life and my feelings are worse, especially when I have to relive it for court

and different reasons.  Will it ever go away, will the pain ever stop?

In her victim impact statement, Victim No. 2 expresses the same level of

emotional damage, anxiety and fear:

> I put years of trust into this person trusted him with stuff that my
> boyfriend doesn't even know.  I've cried on the phone with him, I've
> laughed on the phone with him I've sat n listen to him as he watched
> sports.  I clearly remember him calling be (sic) baby girl or telling me it'll
> be okay.  Many times I called him while I was having a panic attack,
> many sleepless nights cause al I wanted was to talk to him. After a while I
> wanted to meet .. good thing I didn't. (…)
> [E]ventually I stopped talking to him I slowly started to forget him. I felt
> better … then this all flared up again and now .. im 22 I have 3 year old I
> graduated, but to build relationships with anyone is hard .  im always
> cautious … I cant even build a decent relationship with my own family or
> even my kid.  I love them I just keep my guard up with anyone now.
> When truth came out .. I was speechless I cried many times over this like I
> started to beat myself down on how I could have even thought to trust
> someone so much and then this happen…. My anxiety has gotten much
> worse because now I know one of many things that can happen.  Why and
> how did you make me trust you so much? (…) what I felt we had was like
> more then best friends.   This was just as hurtful as finding out your wife
> or husband cheated on you and to be honest I feel cheated .. mentally...
> emotionally .. everything.

Seibert did not limit his collection of child pornography to the sexual images of

Victim No. 1 and Victim No. 2 he manufactured for himself.  Seibert also viewed and collected

digital images from the underworld of child pornography accessible on the internet.  So too,

Seibert's acquisition and possession of images of child pornography from internet web sites has

caused and will continue to cause irreparable harm to many innocent victims.  In *United States*

*v. MacEwan*, 445 F.3d 237 (3d Cir. 2006), the Third Circuit upheld the defendant's sentence for

distributing and possessing child pornography based, in large part, on the extreme harm to the

children who are victims of sexual abuse:

> "In evaluating the magnitude of the harm caused by child pornography, we
> defer to the findings made by Congress. The congressional findings

14

underlying § 2251 repeatedly stress that child pornography 'is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved.'   Child Pornography Prevention Act of 1996, Pub.L. No. 104–208, § 121, 110 Stat. 3009, 3009–26 (1996) (codified as amended at 18 U.S.C. § 2251).   Congress found that 'where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years.' *Id.*

*United States v. MacEwan*, 445 F.3d at 249-50.

Seibert, and others like him who share in the internet world of child pornography, perpetuate the harm to the victims depicted in these images by creating demand and fueling this market, thereby leading to further production of images.   These children are victimized every time the images are downloaded, purchased or viewed by another person.   Given the scope of the Internet, their exploitation is ongoing and relentless.   The images of these children – their most private parts, their faces, the sexual assaults they suffered at the hands of their adult abusers - are circulated around the world, downloaded and viewed by men like this defendant, who use them for self-gratification.

The physical, mental and emotional damage to these child victims is life altering. The Supreme Court has clearly recognized the harm to these children, noting that the "materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation."   *New York v. Ferber*, 458 U.S. 747, 759 (1982); *Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the child victims continuing harm by haunting the children for years to come.")   The victim impact quoted letters cited above describe the same life-long pain that each victim endures because of the acquisition and possession of their pornographic images by men like Seibert.   The victims have sustained severe emotional harm.   Their ability to create and maintain healthy, trusting

15

relationships with others has been impaired.   They must live with fear of wondering whether the images Seibert coerced them into manufacturing will surface someday on the internet.   Seibert's role in the continued victimization of these children is consequential.   Accordingly, the offenses Seibert committed against these children warrant a Guidelines sentence of 30 years' imprisonment.

## 2.   The History and Characteristics of the Defendant.

The history and characteristics of this defendant warrant a sentence within the top of the Guideline range.   Although this is the defendant's first adult criminal conviction, Seibert's statements to agent Evans, as well his extensive collection of both home-made child pornography and internet child pornography confirm Seibert has engaged in the offense conduct for an extended period of time.   According to agent Evans' analysis of the seized evidence, Seibert communicated with multiple young and vulnerable victims over the course of several years.   However, Seibert's advisory Guidelines in this case treat Seibert as a first-time sex offender.   The Guidelines already reflect that Seibert's criminal history is Category I.   He should not receive any additional consideration.   *See United States v. Borho*, 485 F.3d 904 (6th Cir. 2007) (There were no "extraordinary circumstances" that justified a decreased sentence based on, among other considerations, the defendant's lack of a criminal history, lack of evidence that he had ever molested a child, and a sex offender risk assessment that opined that the defendant was at low risk for re-offending); *United States v. Peterson*, 83 Fed. App'x. 150 (8th Cir. 2003) (appeals court reversed District Court's downward departure based on the low likelihood for re-offense and susceptibility to abuse in prison, as the first factor was already accounted for in the Guidelines and the second factor was inapplicable to the facts of the case); *United States v. Goldberg,* 295 F.3d 1133 (10th Cir. 2002) (defendant's lack of prior record, and

16

low risk of recidivism are not valid grounds for downward departure because those factors are all taken into account in the Guidelines themselves).    Seibert's lack of a prior adult record does not provide a basis to vary from the Guideline range, based on the facts of this case.

      The majority of federal child pornography offenders have no prior records when they are sentenced.    *See* U.S. Sentencing Commission, Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 320 (2011) (available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/M andatory_Minimum_Penalties/20111031_RtC_Mandatory_Minimum.cfm).    This puts Seibert squarely in the heartland of most sex offenders in federal court.    Indeed, in the Eastern District of Pennsylvania, a review of the sentences imposed for defendants who committed the same type of offenses – production of child pornography - shows that most defendants were first time offenders who pled guilty.    Most of the sentences imposed in this District were within or near the Guideline range.    *See United States v. Lawrence Jamieson,* Crim. No. 17-113-01 (Pratter, J.)(sentence of 100 years imposed upon a defendant with no prior convictions and who entered plea of guilty); *United States v. Matthew Maffei*, Crim. No. 16-511 (Goldberg, J.)(statutory maximum 90 year sentence imposed on first-time offender who pled guilty); *United States v. James Donaghy*, Crim. No. 17-3 (Bartle, J.) (sentence of 180 months' incarceration on Guidelines of 180 to 210 months, for first time offender who was 35 years old at the time of sentencing, crimes limited to the Internet); *United States v. Quasim Cunningham*, Crim. No. 15-170 (Diamond, J.) (sentence of 240 months' incarceration on Guidelines of 235 to 293 months for 29-year old first time offender whose crimes were limited to the Internet); *United States v. John Corcoran*, Crim. No. 15-132 (Baylson, J.) (sentence of 336 months imposed on Guidelines of 292 to 365 months' imprisonment, 20-year old first time offender); *United States v. Mark*

17

*Wilkens*, Crim. No. 15-520 (Rufe, J.) (sentence of 180 months' incarceration imposed on 56-year old first time offender on Guidelines of 292 to 365 months); *United States v. Kevin Rebbie*, Crim. No.15-300 (Quinones, J.) (sentence of 240 months' incarceration imposed on Guidelines of 210 to 262 months for defendant, first time offender with no sexual abuse of victim); *United States v. Becktold*, Crim. No. 14-30 (Sanchez, J.) (210 months incarceration imposed with Guideline range of 210 to 262 months, first time offender, with no hands-on sexual abuse); *United States v. Townsend*, Crim. No. 13-625) (Dalzell, J.) (sentence of 262 months' incarceration imposed on Guidelines of 210 to 262 months); *United States v. Horton*, Crim. No. 12-228 (McLaughlin, J.) (sentence of 276 months imposed on Guidelines of 360 to life imprisonment, prior offense of DUI only); *United States v. Knappenberger*, Crim. No. 11-316 (Gardner, J.) (sentence of 420 months' incarceration imposed with Guidelines of life imprisonment); *United States v. Jackson*, Crim. No. 07-40 (Stengel, J.) (sentence of 300 months imposed with Guidelines of 360 months incarceration, first time offender).

Here, Seibert's lack of a prior adult record should not provide a basis to vary from the Guideline range, in light of the egregious circumstances in this case. The defendant stands before this Court as a 32-year old man who has done very little with his life.    At the time of his arrest, he was living with his mother in her home in Lehigh County, Pennsylvania.    Seibert is unmarried and has no children.    Seibert graduated high school, and maintained a number of different jobs, and yet he had a negative net worth at the time of his arrest.    Seibert' primary occupation appears to have been producing, collecting and viewing child pornography.    Not surprisingly, he does not have much to show for his life.

18

3.   The Seriousness of the Offense, Respect for the Law, and Just Punishment.

A significant term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2).   Seibert's crimes are among the most serious.   His choice of vulnerable victims elevates the seriousness of his offenses.   The sentence in this case must promote respect for the laws that Seibert has broken over so many years of his life, and must make him understand the impact of his crimes.   This can only be done by the imposition of a significant sentence of incarceration, that is, at least a 30 year term of imprisonment.

Seibert's offense conduct is extremely serious.   The victim impact statements of the two children he abused bear witness to the deep and lasting harm Seibert' offense conduct has caused.   Agent Evans determined that Seibert engaged in similar conduct with approximately ten other minor females.   Although these other victims have not testified in this matter, the sordid nature of Seibert's offense conduct undoubtedly caused similar harm to these victims as well.   The sentence in this case must demonstrate our justice system has the ability and the commitment to address such misconduct effectively.   So too, the sentence must account for the damage caused by the defendant's conduct and provide just punishment for Seibert's role in the offense.

As for the last factor, only a sentence within the Guideline range can adequately punish this defendant.   A sentence of at least 30 years' imprisonment has been well earned, and is necessary to protect those who cannot protect themselves.   See § 3553(a)(2)(A).

4.   Deterrence.

Deterrence is also one of the factors driving the sentence in this case, and a sentence within the Guideline range would address this concern.   Seibert himself needs to be

19

deterred from continuing his life of sexually exploiting children.    There are few boundaries on Seibert's misconduct which he will not cross.    He exploited the innocent minors.    He used deceit and deception to carry out his scheme.    A severe sentence is required to demonstrate to this defendant that his behavior will not be tolerated by society.

The sentence in this case must send the clear message that the exploitation of minor children through the internet has grave consequences.    As public officials have belatedly come to recognize, the internet is largely unregulated.    Thus, the need for general deterrence is great.    A significant period of incarceration will serve to deter others who would consider using the internet to engage in the type of sexual exploitation of minors that Seibert committed.    More importantly, this defendant must be incapacitated from engaging in similar exploitive conduct in the future.    A significant period of incarceration is necessary to prevent Seibert from locating and communicating with additional minor victims.

Section 3553(a)(2) also mandates that the Court consider a sentence that adequately deters others who would commit similar offenses.    The sentence in this case must give notice that the sexual abuse and exploitation of children has serious and significant consequences.    A term of incarceration called for by the Guidelines in this case will serve as a deterrent to those who may contemplate the consequences of sexually abusing a child.

5.    Other considerations.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ."    § 3553(a)(2)(D).    The defendant does not require drug treatment, nor is there any need to provide him with educational or vocational training.    His background shows that he was employed at the time of the offenses, and there is no reason to

20

believe he will have difficulty obtaining employment if and when he is ever released from prison.    Any training or education can be accomplished during the long term of supervised release that is required to be imposed for these crimes.

      6.   <u>Restitution</u>.

      Restitution is mandatory.    There were dozens of identified victims in this defendant's collection, but only three have requested restitution for the harms caused by the defendant's crimes.    Counsel will attempt to negotiate a settlement prior to the sentencing hearing.    In the event that one cannot be reached prior to sentencing, the Government will submit this issue for the Court's determination at the hearing.

      7.  The need to avoid unwarranted sentence disparities among defendants <u>with similar records who have been found guilty of similar conduct</u>.

      The advisory Sentencing Guidelines are an appropriate starting point in determining sentence in this case, and do not result in an unwarranted disparity among defendants with similar records who have been convicted of similar conduct.

## VI. CONCLUSION

Based upon the defendant's offense conduct, the applicable statutory mandatory minimum sentence, the sentencing factors of 18 U.S.C. § 3553(a), the advisory Sentencing Guidelines, and the matters presented to the Court at the Sentencing hearing, the Court should impose a sentence of at least 30 years' incarceration, a term of supervised release of at least five years, restitution, and criminal forfeiture.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

/s/ Frank A. Labor III
FRANK A. LABOR III
Assistant United States Attorney

22

## CERTIFICATE OF SERVICE

Frank A. Labor III, certifies a copy of the Government's Sentencing

Memorandum to be served by electronic mail on counsel for the defendant.

/s/ Frank A. Labor III
FRANK A. LABOR III
Assistant United States Attorney

Date: May 31, 2019